ARMAND J. HOWELL, USB #10029
STUART B. MATHESON, USB #13078
JENNIFER M. DAVENPORT, USB#12054
**MATHESON & HOWELL PC**
Attorneys for Creditor
648 East First South
Salt Lake City, UT  84102
Telephone (801)363-2244
File No. 029328m

---

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| In re: | Chapter 7 |
| **Skot Thomas and Bonnie Thomas** | Bankruptcy Case No. 12-27405 |
| Debtor. | Judge:  William T. Thurman |

---

**MOTION FOR RELIEF FROM AUTOMATIC STAY (REAL PROPERTY)**

---

Bank of America, N.A. ("Movant") hereby moves this Court, pursuant to 11 U.S.C. §362, for relief from the automatic stay with respect to certain real property of the Debtors having an address of 1135 West Arapahoe Avenue, Salt Lake City, UT  84104 (the "Property"), for all purposes allowed by law, the Note (defined below), the Deed of Trust (defined below), and applicable law, including but not limited to the right to foreclose.  In further support of this Motion, Movant respectfully states:

1.      A petition under Chapter 7 of the United States Bankruptcy Code was filed with respect to the Debtors on June 7, 2012.

2.      The Debtors have executed and delivered or are otherwise obligated with

1

respect to that certain promissory note in the original principal amount of $163,922.00 (the "Note").  A copy of the Note is attached hereto as Exhibit A.  Movant is an entity entitled to enforce the Note.

3.       Pursuant to that certain Deed of Trust (the "Deed of Trust"), all obligations (collectively, the "Obligations") of the Debtors under and with respect to the Note and the Deed of Trust are secured by the Property.  A copy of the Deed of Trust is attached hereto as Exhibit B.

4.       All rights and remedies under the Deed of Trust have been assigned to the Movant pursuant to that certain assignment of deed of trust, a copy of which is attached hereto as Exhibit C.

5.       The Debtors' statement of intention indicates the Property is to be surrendered.

6.       As of August 2, 2012, the outstanding amount of the Obligations less any partial payments or suspense balance is $196,040.18.

7.       In addition to the other amounts due to Movant reflected in this Motion, as of the date hereof, in connection with seeking the relief requested in this Motion, Movant has also incurred reasonable fees and costs.  Movant reserves all rights to seek an award or allowance of such fees and expenses in accordance with applicable loan documents and related agreements, the Bankruptcy Code and otherwise applicable law.

8.       The following chart sets forth the number and amount of payments due pursuant to the terms of the Note that have been missed by the Debtors as of August 2, 2012:

2

| Number of Missed Payments | From | To | Monthly Payment Amount | Total Amounts Delinquent |
|---|---|---|---|---|
| 9 | 9/1/2010 | 5/1/2011 | $1,174.57 | $10,571.13 |
| 11 | 6/1/2011 | 4/1/2012 | $1,184.66 | $13,031.26 |
| 1 | 5/1/2012 | 5/1/2012 | $1,174.57 | $1,174.57 |
| 3 | 6/1/2012 | 8/1/2012 | $1,239.07 | $3,718.71 |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  | Total: | $28,495.67 |

9.    The estimated market value of the Property is $120,100.00.  The basis for such valuation is Debtors' Schedule A.

10.    Upon information and belief, the aggregate amount of encumbrances on the Property listed in the Schedules or otherwise known, including but not limited to the encumbrances granted to Movant, is $196,040.18.

11.    Cause exists for relief from the automatic stay for the following reasons:

(a) Movant's interest in the Property is not adequately protected.

(b) Pursuant to 11 U.S.C. §362(d)(2)(A), Debtors have no equity in the Property; and pursuant to §362(d)(2)(B), the Property is not necessary for an effective reorganization.

WHEREFORE, Movant prays that this Court issue an Order terminating or modifying the stay and granting the following:

1.    Relief from the stay for all purposes allowed by law, the Note, the Deed of

3

Trust, and applicable law, including but not limited to allowing Movant (and any successors or assigns) to proceed under applicable non-bankruptcy law.

2.      That the Order be binding and effective despite any conversion of this bankruptcy case to a case under any other chapter of Title 11 of the United States Code.

3.      For such other relief as the Court deems proper.

DATED this 7th day of August, 2012.


MATHESON & HOWELL PC


*/s/  Armand J. Howell*
ARMAND J. HOWELL
STUART B. MATHESON
JENNIFER M. DAVENPORT
Attorney for Creditor
648 East First South
Salt Lake City, Utah 84102
(801)363-2244

**CERTIFICATE OF SERVICE**

I hereby certify that on the 7th day of August, 2012, I caused a true and correct copy of the foregoing Motion to be mailed, postage prepaid, to the following:

Skot Thomas                          Bonnie Thomas
PO Box 522175                        304 East 800 South, #1
Salt Lake City, UT 84152             Brigham City, UT 84302
Debtor                               Debtor

*/s/  Kristin L. Bennion*
Kristin L. Bennion

**CERTIFICATE OF SERVICE**

I hereby certify that on the 7th day of August, 2012, I caused a true and correct copy of the foregoing Motion to be electronically mailed to the following:

Roger G. Segal tr                    John T. Evans
257 East 200 South                   333 East 400 South
Suite 700                            Suite 100
P.O. Box 11008                       Salt Lake City, UT  84111
Salt Lake City, UT  84147-0008       Debtors' Attorney
Chapter 7 Trustee

*/s/  Kristin L. Bennion*
Kristin L. Bennion

5

# EXHIBIT

# A

Redacted

# NOTE

**Multistate**

Redacted

OCTOBER    24 , 2007                    SANDY                      , UTAH
[Date]

1135 West Arapahoe Avenue
Salt Lake City, UTAH 84104

[Property Address]

## 1. PARTIES

"Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Lender" means
SECURITYNATIONAL MORTGAGE COMPANY, A UTAH CORPORATION

and its successors and assigns.

## 2. BORROWER'S PROMISE TO PAY; INTEREST

In return for a loan received from Lender, Borrower promises to pay the principal sum of
ONE HUNDRED SIXTY THREE THOUSAND NINE HUNDRED TWENTY TWO AND 00/100--------------

Dollars (U.S. $      163,922.00      ), plus interest, to the order of Lender. Interest will be charged on unpaid principal,
from the date of disbursement of the loan proceeds by Lender, at the rate of   SIX AND 750/1000
percent (      6.750      %) per year until the full amount of principal has been paid.

## 3. PROMISE TO PAY SECURED

Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date
as this Note and called the "Security Instrument." The Security Instrument protects the Lender from losses which might result if
Borrower defaults under this Note.

## 4. MANNER OF PAYMENT

(A)  **Time**
Borrower shall make a payment of principal and interest to Lender on the first day of each month beginning on
DECEMBER    01 ,    2007    . Any principal and interest remaining on the first day of      NOVEMBER          ,
2037   , will be due on that date, which is called the "Maturity Date."

(B)  **Place**
Payment shall be made at  5300 SOUTH 360 WEST, SUITE 150
MURRAY, UTAH 84123                                     or at such place as Lender may designate in writing
by notice to Borrower.

(C)  **Amount**
Each monthly payment of principal and interest will be in the amount of U.S. $      1,063.19    . This amount
will be part of a larger monthly payment required by the Security Instrument, that shall be applied to principal, interest and
other items in the order described in the Security Instrument.

(D)  **Allonge to this Note for payment adjustments**
If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of
the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of
this Note. [Check applicable box]

☐ Graduated Payment Allonge   ☐ Growing Equity Allonge   ☐ Other [specify]

## 5. BORROWER'S RIGHT TO PREPAY

Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first
day of any month. Lender shall accept prepayment on other days provided that Borrower pays interest on the amount prepaid for
the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary. If Borrower makes a
partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in
writing to those changes.

Redacted
Redacted

FHA Multistate Fixed Rate Note      10/95
-1R (0210).02
*DOCPREP SERVICES, INC.* FORM - BHAFNMS-3253

VMP Mortgage Solutions (800)521-7281

Redacted

## 6. BORROWER'S FAILURE TO PAY

### (A) Late Charge for Overdue Payments

If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of fifteen calendar days after the payment is due, Lender may collect a late charge in the amount of       FOUR                              percent (          4.000          %) of the overdue amount of each payment.

### (B) Default

If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

### (C) Payment of Costs and Expenses

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

## 7. WAIVERS

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

_____ (Seal)
                                              -Borrower
**Skot Thomas**

_____ (Seal)
                                              -Borrower

_____ (Seal)
                                              -Borrower

_____ (Seal)
                                              -Borrower

_____ (Seal)
                                              -Borrower

_____ (Seal)
                                              -Borrower
**Bonnie Thomas**

_____ (Seal)
                                              -Borrower

**COUNTRYWIDE BANK, FSB**
_____ (Seal)
                                              -Borrower

LOAN NO.: Redacted

MIN NO. Redacted

-1R (0210).02
*DOCPREP SERVICES, INC.* FORM - FHAFNMS-3252

Page 2 of 2
ORIGINAL

Security National Mortgage Company,
A Utah Corporation

Garrett S. Sill, Vice President

Redacted



### Allonge to Note

**Name: Skot Thomas And Bonnie Thomas**

**Note Amount: $~~166,344.00~~** *163,922.00* (ew)

**Note Date: 10/24/2007**

**Property Address:**
        **1135 West Arapahoe Avenue**
        **Salt Lake City, UT 84104**

**SNMC Loan Number:** Redacted

**Pay to the order of**

# COUNTRYWIDE BANK, NA FSB (ew)

**Without Recourse**

_____
Garrett S. Sill
Vice President
Security National Mortgage Company, A Utah Corporation

# EXHIBIT

# B

10261215

Return To:
SECURITYNATIONAL
MORTGAGE COMPANY
5300 SOUTH 360 WEST
SUITE 150
MURRAY, UTAH 84123

Prepared By:
HAYLEY HAMMER
SECURITYNATIONAL
MORTGAGE COMPANY
9149 SOUTH MONROE
SUITE A
SANDY, UTAH 84070

Redacted

10261215
10/29/2007 3:19:00 PM $27.00
Book - 9531 Pg - 1687-1695
Gary W. Ott
Recorder, Salt Lake County, UT
TITLE ONE
BY: eCASH, DEPUTY - EF 9 P.

—————————————————[Space Above This Line For Recording Data] —————————————
Tax Serial Number:   15-11-126-010

State of Utah

Redacted

# DEED OF TRUST

Redacted

Redacted

THIS DEED OF TRUST ("Security Instrument") is made on    OCTOBER      24 ,  2007      .
The Grantor is
SKOT THOMAS AND BONNIE THOMAS, HUSBAND AND WIFE, AS JOINT TENANTS

("Borrower"). The trustee is
TITLE ONE
6975 SOUTH UNION PARK CTR #120 MIDVALE, UT 84047
("Trustee"). The beneficiary is Mortgage Electronic Registration Systems, Inc. ("MERS"), (solely as
nominee for Lender, as hereinafter defined, and Lender's successors and assigns). MERS is organized and
existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint,
MI 48501-2026, tel. (888)679-MERS.
SECURITYNATIONAL MORTGAGE COMPANY, A UTAH CORPORATION

("Lender") is organized and existing under the laws of    UTAH                        , and
has an address of
5300 SOUTH 360 WEST SUITE 150; MURRAY, UTAH 84123
. Borrower owes Lender the principal
sum of
ONE HUNDRED SIXTY THREE THOUSAND NINE HUNDRED TWENTY TWO AND 00/100----------Dollars
(U.S. $        163,922.00        ). This debt is evidenced by Borrower's note dated the
same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt,
if not paid earlier, due and payable on        NOVEMBER    01 ,  2037      . This Security Instrument
secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals,

FHA Utah Deed of Trust with MERS - 4/96
Wolters Kluwer Financial Services
VMP  -4N(UT) (0704)        Amended 2/98
Page 1 of 9
Docprep Services, Inc.  Form - MDOTUTG-3245 (Rev 06-2007)

Initials  ST BT ___  ___  ___  ___

ORIGINAL

BK 9531 PG 1687

extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to the Trustee, in trust, with power of sale, the following described property located in     Salt Lake                                                          County, Utah:

**LOT 21, AND 22, BLOCK 6, J.H. WHALON'S ADDITION, ACCORDING TO THE OFFICIAL PLAT THEREOF, ON FILE AND OF RECORD IN THE OFFICE OF THE SALT LAKE COUNTY RECORDER.**

which has the address of   1135 West Arapahoe Avenue                                                          [Street]
Salt Lake City                                [City], Utah        84104        [Zip Code] ("Property Address");

   TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument; but, if necessary to comply with law or custom, MERS, (as nominee for Lender and Lender's successors and assigns), has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing or canceling this Security Instrument.

   BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

   THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

   Borrower and Lender covenant and agree as follows:
   UNIFORM COVENANTS.

   **1. Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

   **2. Monthly Payment of Taxes, Insurance and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable

| Redacted |
|----------|

VMP  -4N(UT) (0704)

*Docprep Services, Inc.*  Form - MDOTUTG-3245 *(Rev. 06-2007)*        Page 2 of 9
**ORIGINAL**

Initials

amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. Section 2601 *et seq.* and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

**3. Application of Payments.** All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

First, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and

Fifth, to late charges due under the Note.

**4. Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

Redacted

VMP -4N(UT) (0704)

*Docprep Services, Inc.*  Form - MDOTUTG-3245 *(Rev. 06-2007)*      Page 3 of 8
ORIGINAL

Initials ___ ___ ___ ___ ___

**5. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

**6. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

**7. Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement, at the Note rate, and at the option of Lender, shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

Initials _SY_ _BLT_ ____ ____ ____ ____

Redacted
VMP -4N(UT) (0704)
*Docprep Services, Inc.* Form - MDOTUTG-3245 *(Rev. 06-2007)*        Page 4 of 9
ORIGINAL

**8. Fees.** Lender may collect fees and charges authorized by the Secretary.

**9. Grounds for Acceleration of Debt.**

(a) **Default.** Lender may, except as limited by regulations issued by the Secretary, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

(i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

(ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

(b) **Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including Section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

(i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

(ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been approved in accordance with the requirements of the Secretary.

(c) **No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

(d) **Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

(e) **Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 days from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

**10. Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or

| Redacted |
| --- |

Initials 9 / B 1 ___ ___ ___

VMP -4N(UT) (0704)

*Docprep Services, Inc.*  Form - MDOTUTG-3245 (Rev. 06-2007)      Page 5 of 8

**ORIGINAL**

Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**14. Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**15. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**16. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

Redacted

VMP  -4N(UT) (0704)

*Docprep Services, Inc.*  Form - MDOTUTG-3245 *(Rev. 06-2007)*       Page 6 of 9

Initials SY BLT ___ ___ ___ ___

**ORIGINAL**

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**17. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

**18. Foreclosure Procedure. If Lender requires immediate payment in full under paragraph 9, Lender may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If the power of sale is invoked, Trustee shall execute a written notice of the occurrence of an event of default and of the election to cause the Property to be sold and shall record such notice in each county in which any part of the Property is located. Lender or Trustee shall mail copies of such notice in the manner prescribed by applicable law to Borrower and to the other persons prescribed by applicable law. Trustee shall give public notice of sale to the persons and in the manner prescribed by applicable law. After the time required by applicable law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.**

**Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it or to the county clerk of the county in which the sale took place.**

**If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 *et seq.*) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Paragraph 18 or applicable law.**

Redacted

VMP -4N(UT) (0704)

*Docprep Services, Inc.* Form - MDOTUTG-3245 *(Rev. 06-2007)*        Page 7 of 9

Initials _____  ___ ___ ___ ___

ORIGINAL

**19. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty and without charge to the person or persons legally entitled to it. Such person or persons shall pay any recordation costs.

**20. Substitute Trustee.** Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by applicable law.

**21. Request for Notices.** Borrower requests that copies of the notices of default and sale be sent to Borrower's address which is the Property Address.

**22. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)].

☐ Condominium Rider ☐ Adjustable Rate Rider ☐ Growing Equity Rider

☐ Planned Unit Development Rider ☐ Graduated Payment Rider ☐ Other [Specify]

---

Redacted

VMP -4N(UT) (0704)

*Docprep Services, Inc.* Form - MDOTUTG-3245 *(Rev. 06-2007)*   Page 8 of 9

Initials _SL_ _BL7_ ___ ___ ___ ___

**ORIGINAL**

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses:

_____     _____ (Seal)
                                                                        -Borrower
                                       **Skot Thomas**


_____     _____ (Seal)
                                                                        -Borrower
                                       **Bonnie Thomas**


_____ (Seal)      _____ (Seal)
                         -Borrower                                     -Borrower


_____ (Seal)      _____ (Seal)
                         -Borrower                                     -Borrower


_____ (Seal)      _____ (Seal)
                         -Borrower                                     -Borrower


**STATE OF UTAH,**                Salt Lake              County ss:
    The foregoing instrument was subscribed and sworn to and acknowledged before me this 24th day
of Oct. , 2007      by
Skot Thomas AND Bonnie Thomas


My Commission Expires: 10-19-11

                                              _____
                                              Notary Public
                                              Residing at: SLC, UT

Notary Public
**BRENDA B. JOHNSON**
6975 South Union Park Center, Suite 120
Midvale, Utah 84047
My Commission Expires
October 19, 2011
State of Utah

Redacted

VMP -4N(UT) (0704)
*Docprep Services, Inc.*  Form - MDOTUTG-3245 *(Rev. 06-2007)*     Page 9 of 9
                                                                   **ORIGINAL**

# EXHIBIT

# C

Recording Requested By:
Bank of America
Prepared By: Danilo Cuenca
888-603-9011
When recorded mail to:
CoreLogic
450 E. Boundary St.
Attn: Release Dept.
~~Chandler SC 29036~~

Redacted

11258263
10/11/2011 11:03:00 AM $13.00
Book - 9956 Pg - 9381-9382
Gary W. Ott
Recorder, Salt Lake County, UT
FIRST AMERICAN CORELOGIC
BY: eCASH, DEPUTY - EF 2 P.

Tax ID:      15-11-126-010
Property Address:
**1135 WEST Arapahoe AVENUE**
**Salt Lake City, UT 84104-2423**
UT0-A    Redacted    9/28/2011

Redacted

This space for Recorder's use

## ASSIGNMENT OF DEED OF TRUST

For Value Received, the undersigned holder of a Deed of Trust (herein "Assignor") whose address is 3300 S.W. 34TH AVENUE, SUITE 101 OCALA, FL 34474 does hereby grant, sell, assign, transfer and convey unto **BANK OF AMERICA, N.A., SUCCESSOR BY MERGER TO BAC HOME LOANS SERVICING, LP FKA COUNTRYWIDE HOME  LOANS SERVICING, LP** whose address is 400 NATIONAL WAY, SIMI VALLEY, CA 93065

all beneficial interest under that certain Deed of Trust described below together with the note(s) and obligations therein described and the money due and to become due thereon with interest and all rights accrued or to accrue under said Deed of Trust.

Original Lender:        **SECURITYNATIONAL MORTGAGE COMPANY, A UTAH CORPORATION**
Made by:              **SKOT THOMAS AND BONNIE THOMAS, HUSBAND AND WIFE; AS JOINT TENANTS**
Trustee:              **TITLE ONE**
Date of Deed of Trust: 10/24/2007        Original Loan Amount: $163,922.00

Recorded in **Salt Lake County, UT** on: 10/29/2007, book 9531, page 1687 and instrument number **10261215**

Property Legal Description:
**LOT 21, AND 22, BLOCK 6, J.H. WHALON'S ADDITION, ACCORDING TO THE OFFICIAL PLAT THEREOF, ON FILE AND OF RECORD IN THE OFFICE OF THE SALT LAKE COUNTY RECORDER.**

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Deed of Trust to be executed on
9-29-11

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.

By:
Luis Reidan Assistant Secretary

Redacted

State of California
County of Ventura

On SEP 2 9 2011  before me, ~~Barbara J. Gibbs~~, Notary Public, personally appeared
Luis Roldan
, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the
within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity
(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the
person(s) acted, executed the instrument.

I certify under **PENALTY OF PERJURY** under the laws of the State of California that the foregoing
paragraph is true and correct.

WITNESS my hand and official seal.

Notary Public: _____                    (Seal)
My Commission Expires: _____

```
BARBARA J. GIBBS
Commission # 1864186
Notary Public - California
Los Angeles County
My Comm. Expires Sep 9, 2013
```

Redacted